UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY GHIAZZA,

                              Plaintiff,

                 v.

ANCHORAGE MARINA, INC., *et al*.,

                              Defendants.

---

No. 19-CV-2792 (KMK)

OPINION & ORDER

Appearances:

Jeffrey Ghiazza
Pleasant Valley, NY
*Pro se Plaintiff*

Eric M. Kurtz, Esq.
Cook, Netter, Cloonan, Kurtz & Murphy, P.C.
Kingston, NY
*Counsel for Anchorage Defendants*

Russell A. Schindler, Esq.
Kingston, NY
*Counsel for Defendant Lawrence W. Ghiazza, Jr.*

KENNETH M. KARAS, United States District Judge:

Plaintiff Jeffrey Ghiazza ("Plaintiff") pursues several state law tort claims against

Defendants Anchorage Marina, Inc. (the "Marina"), Anchorage Restaurant and Marina (the

"Restaurant"), Julie Swarthout ("Swarthout") (collectively, the "Anchorage Defendants"), and

Lawrence W. Ghiazza, Jr. ("Defendant Ghiazza").  (*See* Compl. (Dkt. No. 2).)  Before the Court

are the Anchorage Defendants' and Defendant Ghiazza's respective Motions To Dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Not. of Ghiazza Mot. (Dkt. No. 25); Not.

of Anchorage Mot. (Dkt. No. 29).) For the following reasons, the Motions are granted, and the case is dismissed for lack of subject matter jurisdiction.

## I.  Background

### A.  Factual Background

The following factual allegations, drawn from Plaintiff's Complaint, are taken as true for the purposes of deciding the instant Motions:

Plaintiff and Defendant Ghiazza, residents of New York State, are the children of Lawrence W. Ghiazza, Sr. and Helene A. Ghiazza (the "Parents").  (Compl. ¶¶ 5, 9, 15–16.)  At some point prior to the initiation of the case, Plaintiff performed renovations on the mobile home property of the Parents, for which the Parents owed Plaintiff approximately $13,650.  (*Id.* ¶¶ 10, 17.)  The Parents then transferred title of their boat, the "Lucky Four," to Plaintiff in partial payment of the debt.  (*Id.* ¶ 18.)  The Lucky Four, which is registered with the U.S. Coast Guard, was valued at approximately $3,600, leaving a balance of approximately $10,050 still due to Plaintiff.  (*Id.* ¶¶ 12, 18.)  While Plaintiff maintains that the Lucky Four "was suppose[d] to be delivered . . . free and clear of all encumbrances," Plaintiff has since discovered that the Anchorage Defendants had placed a lien on the boat.  (*Id.* ¶¶ 19–20.)

Subsequently, the Parents died and Defendant Ghiazza was named executor of their estate.  (*Id.* ¶¶ 9, 11, 22.)  While Plaintiff believes that Defendant Ghiazza has "settled the [P]arents['] estate," Defendant Ghiazza has not arranged for payment of the Parents' unpaid debt to Plaintiff.  (*Id.* ¶ 10.)  Specifically, Plaintiff believes that Defendant Ghiazza "had a fiduciary duty" to pay the Parents' debt to Plaintiff and to deliver the Lucky Four to Plaintiff "free of all encumbrances," and that Defendant Ghiazza failed to do so.  (*Id.* ¶¶ 27–28.)  The Lucky Four currently "remains in the possession of" the Anchorage Defendants who are "claiming storage

2

fees, and ha[ve] placed a legally defective lien on the vessel seeking to collect storage fees." (*Id.* ¶ 12.) Plaintiff believes that the lien is defective because the Lucky Four is "a U.S. Coast Guard Documented Vessel" and thus not subject to state court jurisdiction. (*Id.* ¶¶ 20, 23.) The Anchorage Defendants have since advertised the sale of the Lucky Four in a "distant Greek [n]ewspaper," which (Plaintiff believes) demonstrates their "bad faith" and intent to prevent Plaintiff from "lawfully claiming the vessel." (*Id.* ¶ 25.) Plaintiff further alleges that the Anchorage Defendants have charged "inflat[ed]" and "exaggerated storage fees" for storing the Lucky Four. (*Id.* ¶ 26.)

Plaintiff seeks a declaratory judgment "clearing the Title of the Boat in controversy and releasing the Boat to [P]laintiff, free of all encumbrances." (*Id.* ¶ 14.) He also pursues claims for fraud and unjust windfall against the Anchorage Defendants, (*id.* ¶¶ 31–33, 43–44), and for breach of fiduciary duty and breach of contract against Defendant Ghiazza, (*id.* ¶¶ 34–42).

B.  Procedural Background

Plaintiff filed his Complaint on March 28, 2019. (*See* Compl.) On April 29, 2019, Defendant Ghiazza filed his Answer, and the next day, the Anchorage Defendants filed theirs. (*See* Dkt. Nos. 5–6.) On May 13, 2019, Judge Koeltl, to whom the case was first assigned, held a conference, after which the case was reassigned to this Court. (*See* Dkt. (minute entry for May 13, 2019).) On June 3, 2019, the Court directed Plaintiff to show cause by June 28, 2019 explaining why the case should not be dismissed for lack of subject matter jurisdiction. (*See* Dkt. No. 14.) On June 7, 2019, Plaintiff filed a letter arguing, *inter alia*, that the case presented "a unique federal question" because "the boat in controversy is a [f]ederally [d]ocumented [v]essel, under the jurisdiction of the United States Coast Guard and Department of Homeland Security." (Dkt. No. 18.)

3

On June 11, 2019, the Court adopted a briefing schedule for Defendants' anticipated motions.  (Dkt. No. 20.)  On July 10, 2019, the Anchorage Defendants attempted to file their Motion and accompanying papers, and the next day Defendant Ghiazza attempted to file his Motion and accompanying papers.  (Dkt. Nos. 22–23.)  However, both attempts resulted in filing errors.  (*Id.*)  On August 14, 2019, Plaintiff filed his Opposition.  (Dkt. No. 24.)  On October 22, 2019, Defendant Ghiazza successfully refiled his Motion and accompanying papers.  (Not. of Ghiazza Mot.; Decl. of Russel A. Schindler, Esq. in Supp. of Mot. (Dkt. No. 26); Def. Ghiazza's Mem. of Law in Supp. of Mot. (Dkt. No. 27).)  One week later, the Anchorage Defendants also successfully refiled their Motion and accompanying papers.  (Not. of Anchorage Mot.; Aff. of Eric M. Kurtz, Esq. in Supp. of Mot. ("Kurtz Aff.") (Dkt. No. 30); Aff. of Julie Swarthout in Supp. of Mot. ("Swarthout Aff.") (Dkt. No. 31); Anchorage Defs.' Mem. of Law in Supp. of Mot. (Dkt. No. 32).)  As Plaintiff filed his Opposition to identical versions of these Motions, and as Defendants have filed no Replies, the Court deems the Motions fully submitted.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d

306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the

Court may consider "materials outside the complaint to the extent that they are consistent with

the allegations in the complaint."  *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at

*4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of

Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding

procedural rules and to comply with them." (italics and quotation marks omitted)).

   B.  Analysis

As Plaintiff acknowledges that both he and the Anchorage Defendants are citizens of

New York State, (*see* Compl. ¶¶ 5, 6) and as he asserts only state law claims, (*see id.* ¶¶ 31–44),

his sole asserted basis for federal jurisdiction is that the Lucky Four is "under the jurisdiction of

the United States Coast Guard and Homeland Security, qualifying as a federal question."  (Pl.'s

Mem. ¶ 3.)  By contrast, the Anchorage Defendants argue that the Court lacks subject matter

jurisdiction over this case because mere registration of a vessel with the U.S. Coast Guard,

particularly where the vessel has been stored on land for an extended period, does not suffice to

establish federal maritime jurisdiction.  (*See generally* Anchorage Defs.' Mem.)  Defendant

Ghiazza argues that that the Court should decline to exercise supplemental jurisdiction over the

claims against him in the interests of comity, and because these claims are sufficiently distinct

from the claims asserted against the Anchorage Defendants.  (*See generally* Def. Ghiazza's

Mem.)  He further argues that claims against him should be dismissed because the underlying

issues have already been decided in state court, and because he is not, in fact, the executor of the

relevant estate.  (*See id.*)  Because the Court agrees that it lacks subject matter jurisdiction over

the case, it need not reach any additional arguments.

    1.  Maritime Jurisdiction Generally

       The Constitution provides that the federal judicial power "shall extend . . . to all Cases of

admiralty and maritime jurisdiction."  U.S. Const. Art. III § 2.  While the Constitution sets the

limits of federal admiralty jurisdiction, lower federal courts must look to specific statutes to

determine their subject-matter jurisdiction.  *See Kline v. Burke Constr. Co.,* 260 U.S. 226, 234

(1922) ("Only the jurisdiction of the Supreme Court is derived directly from the Constitution.

Every other court created by the general government derives its jurisdiction wholly from the

authority of Congress.  That body may give, withhold or restrict such jurisdiction at its

discretion, provided it be not extended beyond the boundaries fixed by the Constitution.").

Congress has indeed extended the district courts' jurisdiction to maritime tort and contract

claims, *see* 28 U.S.C. § 1333 (extending district court jurisdiction to "[a]ny civil case of

admiralty or maritime jurisdiction"), but this jurisdiction is not open-ended and undefined.  As

the Supreme Court has explained, a tort is not a maritime tort unless it bears "a significant

relationship to traditional maritime activity."  *Executive Jet Aviation, Inc. v. City of Cleveland,*

409 U.S. 249, 268 (1972).[1]  The Second Circuit thus applies a two-prong test to determine "when

---

[1] Maritime jurisdiction is analyzed slightly differently for tort and contract claims.  *See
Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) (discussing the distinct jurisdictional
inquiries for maritime tort and contract claims).  Here, while Plaintiff includes a contract claim
against Defendant Ghiazza, the relevant contract appears to be his agreement with his parents for
construction work on their mobile home.  (*See* Compl. ¶¶ 37–42.)  Clearly, this is not a maritime

a tort action falls within the federal courts' admiralty jurisdiction." *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009). "First, the alleged tort must have occurred on or over navigable waters.  Second, the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce." *Id.* (quotation marks omitted) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995)).  Thus, where a tort—even one involving a vessel—occurs solely on land, the first prong cannot be satisfied and there is no maritime jurisdiction.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 109 (2d Cir. 1997) ("[S]ince the incident at issue in the instant case occurred solely on land . . . admiralty tort jurisdiction does not lie." (citations omitted)); *In re Carter*, 743 F. Supp. 2d 103, 107 (D. Conn. 2010) (finding no maritime jurisdiction because the relevant tort "began on land and occurred *solely* on land."); *Smith v. Mitlof*, 198 F. Supp. 2d 492, 500 (S.D.N.Y. 2002) (explaining that "alleged torts, arising out of representations" made during the sale of a vessel, "took place on land where the contract was consummated").

Here, Plaintiff pursues three tort claims: "fraud by concealment," (Compl. ¶¶ 31–33), "breach of fiduciary duty," (*id.* ¶¶ 34–36), and "unjust windfall" (in connection with the alleged fraud), (*id.* ¶¶ 43–44).  While these alleged tort actions may concern, and the requested remedies may indirectly involve, the Lucky Four, none of the challenged *conduct* is alleged to have "occurred on or over navigable waters." *Vasquez*, 582 F.3d at 298.  On the contrary, Plaintiff's only specific allegations with respect to the Anchorage Defendants are that they "advertised the

---

contract. *See Folksamerica Reinsurance Co. v. Clean Water of New York, Inc*., 413 F.3d 307, 315 (2d Cir. 2005) (inquiring "whether the principal objective of a contract is maritime commerce" (citation omitted)).  The Court therefore construes the Complaint as requesting that the Court exercise supplemental jurisdiction over his contract claim based on the purportedly maritime nature of his tort claims.

lien/sale of the vessel in a distant Greek [n]ewspaper"; are "holding and possessing the boat"; and are "gouging" through "exaggerated storage fees."  (Am. Compl. ¶¶ 24–26.)  Similarly, Plaintiff's only allegation with respect to Defendant Ghiazza is that he failed to adequately fulfill the requirements of their Parents' will.  (Compl. ¶ 35.)  There is, however, no allegation that *any* of these actions occurred on water, and the Court may not infer that they did so occur.  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (explaining, in the context of determining admiralty jurisdiction, that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (citation omitted)); *Rodriguez v. Winski*, No. 12-CV-3389, 2020 WL 1188462, at *4 (S.D.N.Y. Mar. 12, 2020) (quoting the same); *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 319 (E.D.N.Y. 2003) ("When evaluating subject matter jurisdiction . . . [, d]istrict courts must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction." (citations omitted)).

Moreover, only one of the above actions could even conceivably have occurred on water, specifically the Anchorage Defendants' "holding and possessing" the Lucky Four.  (Compl. ¶ 24.)  However, even if the Anchorage Defendants did "hold[] and possess[]" the Lucky Four on water, the location of such possession would likely *not* constitute the site of the tort for the purposes of establishing maritime jurisdiction.  *See Smith*, 198 F. Supp. 2d at 500 (explaining that "alleged torts, arising out of representations" made during the sale of a vessel, "took place on land where the contract was consummated"); *Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162, 172 (S.D.N.Y. 1999) (explaining that, for the purposes of

maritime jurisdiction, claims of misrepresentation occur where the misrepresentation occurs, not where the vessel sits).  In any event, the Anchorage Defendants have submitted affidavits attesting that the Lucky Four "has not seen water since at least 2015."  (Kurtz Aff. ¶ 8; *see also* Swarthout Aff. ¶ 4.)  The Court may consider such affidavits in determining its jurisdiction.  *See Commercial Union*, 239 F. Supp. 2d at 319 ("When evaluating subject matter jurisdiction, district courts may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question." (citations omitted)).[2]  Accordingly, the Court also concludes that the Anchorage Defendants have defeated any possible inference that their allegedly improper possession of the vessel occurred on water.  *See In re Carter*, 743 F. Supp. 2d at 108 (concluding that there was no maritime jurisdiction over a tort claim involving a vessel that "had been in storage on land for ten months"); *see also MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 143 (2d Cir. 2011) (describing *In re Carter* as "cogent and well-reasoned").  There is thus no basis for maritime jurisdiction over any of Plaintiff's claims.

### III.  Conclusion

For the reasons stated above, the case is dismissed for lack of subject matter jurisdiction.  If Plaintiff believes he can cure the jurisdictional defects and wishes to file an amended complaint, he must do so within 30 days of the date of this Opinion & Order.  Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion & Order.  Plaintiff is advised that the amended complaint will replace, not supplement,

---

[2] Local Rule 12.1 provides that "[a] represented party moving to dismiss or for judgment on the pleadings against a party proceeding pro se, who refers in support of the motion to matters outside the pleadings as described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file the following notice with the full text of Fed. R. Civ. P. 56 attached at the time the motion is served."  Local Civil Rule 12.1.  The Court notes that the Anchorage Defendants have served and filed such notice.  (*See* Dkt. Nos. 23-5; 29-2.)

his original Complaint.  The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the instant dismissal will be converted to dismissal with prejudice.

The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 25, 29), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      July 27, 2020
            White Plains, New York

_____

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE