UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY GHIAZZA,

                Plaintiff,

           v.

ANCHORAGE MARINA, INC., *et al*.,

                Defendants.

No. 19-CV-2792 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances:</u>

Jeffrey Ghiazza
Pleasant Valley, NY
*Pro se Plaintiff*

Eric M. Kurtz, Esq.
Cook, Netter, Cloonan, Kurtz & Murphy, P.C.
Kingston, NY
*Counsel for Anchorage Defendants*

Russell A. Schindler, Esq.
Kingston, NY
*Counsel for Defendant Lawrence W. Ghiazza, Jr.*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Jeffrey Ghiazza ("Plaintiff") pursues a putative claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 *et seq.*, against Defendants Anchorage Marina, Inc. (the "Marina"), Anchorage Restaurant and Marina (the "Restaurant"), Julie Swarthout ("Swarthout") (collectively, the "Anchorage Defendants"), and Lawrence W. Ghiazza, Jr. ("Defendant Ghiazza"). (Am. Compl. 1–2 (Dkt. No. 36).) Before the Court are (i) the Anchorage Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil

Procedure 12(c), and (ii) Defendant Ghiazza's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Anchorage Defs.' Not. of Mot. (Dkt. No. 49); Def. Ghiazza's Not. of Mot. (Dkt. No. 45).)  For the following reasons, the Motions are granted, and the case is dismissed for lack of subject matter jurisdiction.

## I.  Background

The Court previously described the allegations of this case in an Opinion & Order issued on July 27, 2020 (the "July 2020 Opinion").  (*See* Op. & Order ("July 2020 Op.") (Dkt. No. 33).)[1]  As discussed in the July 2020 Opinion, Plaintiff and Defendant Ghiazza, residents of New York State, are the children of Lawrence W. Ghiazza, Sr. and Helene A. Ghiazza (the "Parents"). (July 2020 Op. 2.)  Prior to the commencement of this case, Plaintiff performed renovations on the Parents' mobile home, for which they owed Plaintiff approximately $13,650.  (*Id.*; *see also* Am. Compl. 1.)  The Parents attempted to transfer title of their boat, the "Lucky Four," to Plaintiff in partial satisfaction of the debt.  (Am. Compl. 1.)[2]  The Lucky Four, which was registered with the U.S. Coast Guard, was valued at approximately $3,600, leaving a balance of approximately $10,050 still owed to Plaintiff.  (*Id.*)  At some point, the Parents passed away.

---

[1] Although the Court, in dismissing Plaintiff's claims, warned him that his amended complaint would "replace, not supplement, his original Complaint," and therefore advised him that any amended complaint should "contain *all* of the claims, factual allegations, and exhibits that [he] wishe[d] the Court to consider," (July 2020 Op. 10–11), the Amended Complaint omits certain factual context that was set forth in the original Complaint, (*compare* Compl. (Dkt. No. 2), *with* Am. Compl.).  To make sense of the underlying narrative, the Court will, as necessary, rely on the factual allegations as described in the July 2020 Opinion.  The Court will also endeavor to identify certain factual discrepancies between the Complaint and Amended Complaint.

[2] In his Amended Complaint, Plaintiff alleges that his Parents "unsuccessfully transferred" title of the Lucky Four.  (Am. Compl. 1.)  In his original Complaint, Plaintiff did not allege that his Parents' transfer of the Lucky Four was "unsuccessful."  (*See* Compl. ¶ 18.)  Rather, he merely alleged that the boat was not transferred "free and clear of all encumbrances," as it was "suppose[d] to be."  (*Id.* ¶¶ 18–19.)

(*See id.*)  Before their death, Defendant Ghiazza "was named as the responsible party over the remaining business," although there were allegedly "no letters of administration and . . . no probate proceedings."  (*Id.*)[3]

Plaintiff alleges that although "[i]t was agreed" that Defendant Ghiazza would satisfy the remainder of the Parents' debt to Plaintiff, and would "deliver the Lucky Four to [Plaintiff] free of all encumbrances," he has failed to do so.  (*Id.* at 1–2.)  Of relevance here, the Anchorage Defendants "claim[] that a lien was placed on the boat prior to the unsuccessful transfer of title to [Plaintiff]," apparently because of boat storage fees that are past due.  (*See id.* at 2; *see also* July 2020 Op. 2–3 (explaining Plaintiff's allegation that the Anchorage Defendants have placed a lien on the Lucky Four because of unpaid storage fees).)  Plaintiff alleges that because "the lien was placed on the Lucky Four while in the care and control of [his] deceased father and [D]efendant [Ghiazza]," he is "not financially responsible for the payment of past or recurring storage fees."  (Am. Compl. 2.)

In his initial Complaint, Plaintiff sought a declaratory judgment "clearing the Title of the Boat in controversy and releasing the Boat to [P]laintiff, free of all encumbrances."  (July 2020 Op. 3 (alteration in original) (quoting Compl. ¶ 14).)  He also brought claims for fraud and unjust windfall against the Anchorage Defendants, and for breach of fiduciary duty and breach of contract against Defendant Ghiazza.  (*Id.*)  The Court dismissed the claims for lack of subject matter jurisdiction.  (*See id.* at 6–11.)  Because both Plaintiff and the Anchorage Defendants are citizens of New York State, and because Plaintiff had asserted exclusively state law claims, Plaintiff's sole asserted basis for invoking the Court's subject matter jurisdiction was the fact that

---

[3] It is unclear what "business" Plaintiff refers to.  He may well be referring to the fact that Defendant Ghiazza was named executor of the Parents' estate.  (July 2020 Op. 2.)

3

the Lucky Four was "under the jurisdiction of the United States Coast Guard and Homeland Security," which, he argued, "qualif[ied] as a federal question." (*Id.* at 6 (record citation omitted).) The Court held that there was no basis for maritime jurisdiction over any of Plaintiff's claims against the Anchorage Defendants, (*see id.* at 7–10), and therefore found that the Court lacked subject matter jurisdiction, (*see id.* at 7, 10–11).

Plaintiff filed his Amended Complaint on September 18, 2020. (Dkt. No. 35.) With minor discrepancies, noted *supra*, Plaintiff's factual allegations remain unchanged. (*Compare* Compl., *with* Am. Compl.) Now, however, Plaintiff purports to bring a claim against the Anchorage Defendants under the FDCPA and possibly the FTCA. (Am. Compl. 2.) Specifically, Plaintiff alleges that the Anchorage Defendants have "no grounds to demand payment for storage fees . . . for a boat that was never legally transferred or in [his] possession during the time that the fees were accrued." (*Id.*) "This conduct," Plaintiff alleges, constitutes "an unfair or deceptive act or practice in violation of the [FDCPA] pursuant to the [FTCA]." (*Id.*) He seeks $350,000 in damages from the Anchorage Defendants based on their alleged violations of the FDCPA. (*Id.*) He also seeks $13,650 from Defendant Ghiazza for the renovations he performed on the Parents' mobile home, "plus court costs and damages" in the amount of $25,000. (*Id.* at 2–3.)

On October 21, 2020, Defendant Ghiazza and the Anchorage Defendants filed Answers to the Amended Complaint. (Dkt. Nos. 37, 40.) The Anchorage Defendants also asserted a counterclaim against Plaintiff. (Dkt. No. 40.) On the same day, Defendant Ghiazza filed a pre-motion letter seeking permission to file a motion to dismiss. (Dkt. No. 38.) On October 29, 2020, the Court adopted a briefing schedule for Defendant Ghiazza's motion, (Dkt. No. 42), and the Anchorage Defendants requested a pre-motion conference in anticipation of filing their own

4

motion to dismiss, (Dkt. No. 41). The Court adopted a briefing schedule for the Anchorage Defendants' motion on November 6, 2020. (Dkt. No. 43.) Defendant Ghiazza submitted the instant Motion To Dismiss and supporting papers on December 1, 2020. (*See* Def. Ghiazza's Not. of Mot.; Decl. of Russell A. Schindler, Esq., in Supp. of Mot. ("Schindler Decl.") (Dkt. No. 46); Def. Ghiazza's Mem. of Law in Supp. of Mot. ("Def. Ghiazza's Mem.") (Dkt. No. 47).) On the same day, the Anchorage Defendants filed the instant Motion for Judgment on the Pleadings and supporting papers. (*See* Anchorage Defs.' Not. of Mot.; Aff. of Eric M. Kurtz, Esq., in Supp. of Mot. ("Kurtz Aff.") (Dkt. No. 50); Anchorage Defs.' Mem. of Law in Supp. of Mot. ("Anchorage Defs.' Mem.") (Dkt. No. 51).) Plaintiff filed an Opposition on January 7, 2021. (*See* Pls.' Mem. of Law in Opp'n to Mots. ("Pl.'s Opp'n") (Dkt. No. 52).) Defendant Ghiazza filed a Reply on January 20, 2021. (Def. Ghiazza's Mem. of Law in Further Supp. of Mot. ("Def. Ghiazza's Reply") (Dkt. No. 54).) The Anchorage Defendants did not submit a Reply. (*See* Dkt.)

## II. Discussion

### A. Standard of Review

To prevail on a motion under Federal Rule of Civil Procedure 12(c), a party must establish that no material facts are in dispute and that judgment must be granted as a matter of law. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Nieves v. Comm'r of Soc. Sec.*, No. 17-CV-6844, 2019 WL 5722272, at *10 (S.D.N.Y. Aug. 9, 2019). "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (citation, alterations, and quotation marks omitted). To resolve a Rule 12(c) motion, "the [C]ourt considers the complaint, the answer, any written documents attached to them, and any

matter of which the [C]ourt can take judicial notice for the factual background of the case." *Id.* at 422 (citation and quotation marks omitted).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Anchorage Defendants argue that they do not constitute a "debt collector" under the FDCPA, and thus, this statute "is inapplicable to the matter before this Court." (Anchorage Defs.' Mem. 8.)[4]  To the extent Plaintiff purports to assert a claim under the FTCA, Anchorage Defendants note that there is no private right of action under this statute. (*Id.* at 10.)  Defendant Ghiazza argues that the only factual claim made against him is that he is the "responsible party" for payment of an alleged debt owed to Plaintiff.  (Def. Ghiazza's Mem. 1.)  He moves to dismiss this Action on the grounds that the instant claims are identical to those raised unsuccessfully in a state court action, and therefore must be dismissed under principles of res

---

[4] Unless otherwise noted, citations to all Defendants' motion papers refer to the ECF stamp at the top of the page.

judicata or collateral estoppel. (*Id.*) Alternatively, he argues that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim(s) against him. (*Id.*)

"The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Schmelczer v. Penn Credit Corp.*, No. 20-CV-2380, 2021 WL 325982, at *4 (S.D.N.Y. Feb. 1, 2021) (citation, brackets, and quotation marks omitted). To establish a claim under the FDCPA, a plaintiff must meet three requirements:

> (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any action or omission in violation of FDCPA requirements.

*Id.* at *5 (quoting *Okyere v. Palisades Collection*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013)). "A 'debt collector' is a person 'who regularly collects . . . debts owed . . . another' or a person involved 'in any business the principal purpose of which is the collection of any debts.'" *Okyere*, 961 F. Supp. 2d at 529 (quoting 15 U.S.C. § 1692a(6)). The definition of "debt collector" excludes "creditors," whom the FDCPA defines as "any person who offers or extends credit creating a debt *or to whom a debt is owed*." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 579 (S.D.N.Y. 2015) (emphasis added) (citing 15 U.S.C. § 1692a(4), (6)(A)). "Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it." *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945, 2018 WL 1605574, at *11 (S.D.N.Y. Mar. 29, 2018). Creditors, as opposed to debt collectors, are not generally subject to the FDCPA. *Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *9 (S.D.N.Y. Apr. 23, 2019); *see also Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) (same). That is, the FDCPA "limits its reach to those

collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *Dash*, 2019 WL 1780140, at *9 (quoting *1077 Madison Street LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015)).

Here, the Amended Complaint "fails to provide any facts that actively and plausibly support the conclusion that any of the [Anchorage] [D]efendants are 'debt collectors' within the meaning of the [FDCPA]." *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009). "There is no contention," for example, "that debt collection was a principal purpose of [Anchorage Defendants'] business." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004). Nor has Plaintiff alleged that Anchorage Defendants "regularly engaged in such activity." *Id.* (explaining that "[t]he FDCPA establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity"). To the contrary, the Amended Complaint makes clear that Anchorage Defendants have simply demanded payment of a debt which Plaintiff allegedly owes them. (*See* Am. Compl. 2 (indicating that Anchorage Defendants have demanded "payment of past or recurring storage fees" for their storage of the Lucky Four).) As persons "to whom a debt is owed," Anchorage Defendants fall squarely under the FDCPA's definition of "creditor," *Polanco*, 132 F. Supp. 3d at 579, and therefore are not subject to its provisions, *Backuswalcott v. Common Ground Comm. HDFC, Inc.*, 104 F. Supp. 2d 363, 366 (S.D.N.Y. 2000) (noting that the FDCPA "does not apply to creditors collecting their own debts"). Because Plaintiff has not alleged that Anchorage Defendants are "debt collectors" under the FDCPA, Plaintiff has failed to state a claim under the statute. *See Johnson-Gellineau*, 2019 WL 2647598, at *8–9 (dismissing FDCPA claim where the plaintiff failed to allege facts showing that the defendants constituted "debt collectors" under the FDCPA); *Dash*, 2019 WL

9

1780140, at *10 (dismissing claim under the FDCPA where the plaintiff "failed to plead facts to show that [the defendant] is actually a debt collector within the meaning of the statute"); *see also Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) (summary order) (affirming dismissal of FDCPA claim where the plaintiffs' "complaint fail[ed] adequately to allege that the defendants qualif[ied] as debt collectors for purposes of the FDCPA").

Although it is unclear whether Plaintiff actually seeks to assert a claim under the FTCA, Anchorage Defendants correctly point out that there is no private right of action under this statute. (*See* Anchorage Defs.' Mem. 10.) *See, e.g.*, *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978) ("[I]t is clear that no private right of action arises under th[e] [FTCA]."); *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (2d Cir. 1974) (observing that "the provisions of the [FTCA] may be enforced only by the Federal Trade Commission[,]" and that "[n]owhere does the [FTCA] bestow upon either competitors or consumers standing to enforce its provisions"); *Trisvan v. Checkers Drive-In Rests., Inc.*, No. 16-CV-7000, 2020 WL 906635, at *5 (E.D.N.Y. Feb. 18, 2020) (dismissing a plaintiff's putative claim under the FTCA "[b]ecause [the] [p]laintiff [was] a private party and the FTCA may be enforced only by the FTC"); *Oliver v. U.S. Bancorp*, No. 14-CV-8948, 2015 WL 4111908, at *6 (S.D.N.Y. July 8, 2015) ("[I]t is well settled that there is no private right of action under the [FTCA]."). Thus, the FTCA does not provide a basis for invoking the Court's federal-question jurisdiction in this case.

Because Plaintiff has failed to invoke the Court's federal-question jurisdiction, this Court lacks subject matter jurisdiction to hear claims against the Anchorage Defendants. *See Suarez v. Marcus*, No. 20-CV-11051, 2021 WL 603048, at *2 (S.D.N.Y. Feb. 12, 2021) ("Mere invocation of federal-question jurisdiction, without any facts demonstrating a federal-law claim, does not create federal-question jurisdiction."). Having dismissed the putative federal claims against

10

Anchorage Defendants, the Court lacks subject matter jurisdiction over this Action. Plaintiff's claim(s) against Defendant Ghiazza sound solely in state law, (see Am. Compl. 2–3), and Plaintiff fails to allege any facts that would enable him to invoke the Court's diversity jurisdiction, see Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322–23 (2d Cir. 2001) ("[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." (citation, quotation marks, and brackets omitted)). Plaintiff has not alleged, for example, that there is diversity of citizenship between him and Defendants, as is required under 28 U.S.C. § 1332. (See generally Am. Compl.) See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) ("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship."). Because Plaintiff has failed to invoke the Court's diversity jurisdiction, his remaining claim(s) against Defendant Ghiazza are dismissed. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (citation omitted)); Cloyce v. Macy's Dep't Store, No. 05-CV-597, 2006 WL 983931, at *3 (S.D.N.Y. Apr. 12, 2006) (adopting report & recommendation dismissing a plaintiff's state law claims "for failure to demonstrate a basis for diversity jurisdiction").[5]

---

[5] Although Plaintiff argues that Defendant Ghiazza's Motion was improperly filed because he had already filed an Answer to the Amended Complaint, (see Pl.'s Opp'n 6–7), "when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety," Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006); see also, e.g., LaSpisa v. CitiFinancial Co., No. 19-CV-228, 2020 WL 2079410, at *7 (N.D.N.Y. Apr. 30, 2020) (observing that courts "may (and, indeed, ha[ve] to) sua sponte analyze and dismiss any claims for lack of subject-matter jurisdiction" (italics omitted)). Moreover, although both Parties

Having dismissed all of Plaintiff's claims, the Court has no independent subject matter jurisdiction over Anchorage Defendants' counterclaim, which also sounds solely in state law. (*See* Answer ¶¶ 1–14.)  *See Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P.C. v. Noto*, 94 F.R.D. 184, 188 (E.D.N.Y. 1982) (noting that, "[i]f the underlying complaint . . . ha[s] been dismissed for lack of subject matter jurisdiction, any counterclaims brought pursuant to the [c]ourt's ancillary jurisdiction [must] be dismissed as well").[6]

### III.  Conclusion

For the reasons stated above, Defendants' Motions are granted.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 45, 49), enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:   September 24, 2021
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

filed the instant Motions *after* filing Answers, they were expressly permitted to do so by this Court.  (*See* Dkt. Nos. 42–43.)

[6] Anchorage Defendants' counterclaim is set forth in numbered paragraphs 1–14 beginning on page four of their Answer.